I believe we are all situated and ready to proceed with the first case. United States v. Persson. May it please the court, my name is David Gordon and I represent Appellant Evelyn Persson. Ms. Persson was tried on an Eastern District indictment charging her with conspiring with Justin Smith to distribute and possess with intent to distribute heroin and cocaine. She was charged also with maintaining a stash house and possession of a firearm in relation to the two narcotic offenses. She was acquitted of the stash house count and the jury entered verdicts of guilty on the other two counts. The only evidence from which the jury could possibly find Ms. Persson guilty of the conspiracy count that she conspired with Justin Smith, her co-defendant who was staying in her apartment, was the crack, heroin, and related paraphernalia seized from the apartment in quantities to indicate that crack and heroin was possessed by Smith with intent to distribute. Plus proof beyond a reasonable doubt that Ms. Persson knew what was seized, that she had knowledge of what was seized. There was no evidence at all that Ms. Persson possessed any of these items or that she sold crack or heroin or that she had any discussions at all with Smith concerning narcotics. The evidence with respect to Ms. Persson's knowledge was extremely weak. There was no evidence at all as to how long any of the items that were seized or how briefly any of those items had been in the apartment. They could have been brought there the night before. Much of the items that were seized was hidden in a bedroom where Smith kept his clothes or in a shoe. Statements by Smith. Were the items also in plain view in the living room? Well, there was a great dispute as to what was in plain view. But Smith, when he was in custody at Arrakis Island, made a phone call to a friend in which he indicated that when the police were knocking on the door, he normally sleeps with a gun by his side and he's reaching for the gun. He can't find it. So he's pulling everything out from under the futon. Why is he keeping everything under the futon except to hide it from his person? I think you want to get to your argument. Fine, Your Honor. I submit that Ms. Persson was convicted because she was denied a fair trial. The most significant error related to purported 404B evidence. At the trial, the court permitted the government to introduce evidence pursuant to Rule 404B that seven years earlier, two men had been arrested in or immediately outside her apartment in possession of crack. One of them had a large amount of money also. And also that Ms. Persson allegedly had been in possession of crack. No case has been found where 404B evidence was ever permitted based upon crimes committed by other people.  Why isn't that highly relevant to the question that she was raising that she didn't know, had no knowledge of her house being used that way? Now, you know, it is also prejudicial, of course. But the balance then is the one that the court makes. But why isn't it something that one would want to know on just the issue that was being tried? Your Honor, if there had been evidence that the two men who had possessed crack had some relationship with Smith, that would be probative that the people related to Smith had possessed drugs in her apartment seven years earlier. But the fact that somebody possesses them a long time ago doesn't give her knowledge that somebody totally unrelated to them possesses it seven years later. It's just not probative. Were two men arrested in her apartment? Well, one of them was arrested in front of her apartment. He was arrested at 6 o'clock in the morning when they arrived at the apartment before they executed the search warrant. And the other one was arrested inside. And they were arrested with narcotics. One of them had seven twists of crack, and the other one had one twist of crack. And the one who had the one twist of crack had over $3,000 in money. So the government's theory, and help me understand the error in it, is that as you started, the central issue in this case, as you phrased it in your beginning argument, was her knowledge with regard to the current instance. Did she know that Smith was possessing? And was she a knowing co-conspirator in this possession with intent to distribute? This earlier instance occurring at the exactly same place, also involving narcotics, two men, doesn't, just on a sort of doctrine of chances, doesn't help us illuminate her intent. There may have been 20 people staying in between that didn't have drugs. You have no reason to think that everybody who's staying in your apartment has drugs just because someone does seven years earlier. It just doesn't make any sense. All that then becomes a question for the jury. I mean, yes, the jury could perfectly well, and I might very well come out the other way, but isn't that exactly the kind of thing was trying to figure out what this link was? Was there a link or was there not? And it's clear that the jury was very much in doubt, given the verdict that, you know, you say is inconsistent, it can be made consistent, but why is this sort of argument not exactly a jury question? The probative value is nonexistent or so minimal that it is substantially outweighed by the prejudice. It's killed by association because she associates with someone. Your Honor, you have in your brief what I considered an extremely strong point about ineffective assistance of counsel in response to your motion to suppress. Thank you. Given that I have only ten minutes. Seven of your ten minutes have passed and you haven't reached it yet. Are you going to talk about it? If Your Honor has any questions, I went in great detail as to what an effective lawyer would have done at the suppression hearing, and it was not done. The judge refused to order the hearing reopened because the judge ruled that Maryland v. Bowie applied, so it didn't matter whether you believe Ms. Person or you believe the officers. Maryland v. Bowie. The judge also explained that he was denying the motion because a hearing will be reopened only when new evidence is sought to be offered. If that evidence was previously unavailable and unknown, and your very point rests on the fact that not only was it available, but it was known, and it was because it was known, that it was ineffective of counsel to bring it out. That's right. I mean, ineffectiveness argument can't be based upon something that's unknown. If it was unknown, the lawyer is blameless. But if it's something that's known and should have been brought out and wasn't brought out, the lawyer did not act properly. Your strongest argument was that, along with the inappropriate reasons that the judge gave for denying the motion, the fact that counsel failed to bring out that the woman did ask to change her clothes at a later time, according to her testimony. That's correct. And his failure to ask that made her look on its face like a total liar. Of course. Since the photographic evidence showed that her clothes had changed. Of course. Well, I'm not here to argue your case. You are. No, I didn't say that, but I put that in the brief. I don't know that I could have made it any more effective in an oral argument. But certainly, if the judge had believed her, if the lawyer had acted properly and the judge had believed her over the officer, the officer admitted that if she hadn't asked to change her clothes, they would have had no reason at all to go into that apartment. So Maryland v. Bowie doesn't apply. Maryland v. Bowie only applies to protect the safety of the officer or to prevent the destruction of evidence. There is no evidence. The warrants were for spitting and making too much noise. There was no evidence. The government argues that the constitutional law allows the officers to search, to make a sweep search, even if the arrest is made outside the premises. I think for quality of life offenses where they have no reason to think there's anybody inside or anybody there who might destroy evidence, when the officer admits that he was not concerned about his safety, he would have just placed her under arrest. And she's trying to walk out of the apartment to, here, take me into custody. The lawyer also did not give the judge any reason why this person would not have asked to change her clothes. She knew there was a gun there. She knew that Justin Smith was there. The last thing she wants is to give them any excuse to come inside the apartment. If she hadn't been dressed, she would have gotten dressed before she opened the door. The district court said in denying the motion to reopen that the evidence was not newly discovered. Didn't it also say that it wasn't material? How could it not be? I don't understand how it could not be material. Of course it wasn't newly discovered. Material to its determination. It should have been, because it should have been material to its determination, because she's trying to leave the apartment. They could have arrested her right outside the apartment, and they would have. The officer concedes that he would have done that. It seems to me it was highly material. Very material. The lawyer left the evidence in a manner that proclaimed his client to be lying, because it appeared that she was saying she never said she wanted to change her clothes, yet she was shown to have changed her clothes. And what he failed to bring out was that she, by her own account, did ask to change her clothes later on when she was being arrested for the narcotics offense rather than simply because of the trivial offenses represented in the warrant. Your Honor, with respect to the inconsistent verdict, the government, after post-verdict motions were filed, the government for the first time tries to say, well, the verdict could be justified upon a finding of conspiracy to distribute powder cocaine. I submit that that's ridiculous. The two samples that were tested for, the residues that were tested, they didn't have enough to test it for crack, but it's clear from where the residue was found that it was crack cocaine. It wasn't powder cocaine. There was only powder cocaine in two of the glass scenes that were in the shoebox in this closet. On this point, do you want to use your rebuttal time now, or would you like to preserve it? I'll preserve it. Your time is up. I'll preserve it. Thank you. May it please the Court, if Your Honors have any questions, I think I'm going to start with Judge LaValle's concern about the suppression hearing issue and ineffective assistance of counsel. I'd like to know how you defend the reasons the judges gave for the denial of the motion to reopen the hearing. Yes, Your Honor. It doesn't make sense at all. Yes, Your Honor. I think the key point is that the judge had concluded, and although it's not as clearly articulated as it could have been in the decision, that a hearing on the matter would be fruitless because even if all those facts were credited to the defendant here, the suppression hearing would still be denied on the basis of Marilyn V. Bowie. On the basis of? Marilyn V. Bowie, Your Honor. Because as the Court found in its findings of fact, the defendant was arrested standing in her doorway with the door open. Under those facts, the police officers had the right to engage in a cursory sweep to protect themselves. And as the facts bear out in this case, a cursory sweep was in fact necessary. There was another individual in this apartment with a loaded firearm in that apartment. Given those facts, even if the defendant had said she didn't need to change, even if the facts are credited here, the police officers had the permission to go in and see the items that were plain view in the adjacent room. Why did they need to do a cursory sweep if she was standing outside and they could arrest her? Your Honor, because she was standing in the doorway with the doorway open, as the Court found. In those circumstances, we're not talking about down the hallway outside of a locked apartment. We're talking about an open... Wouldn't one want to know whether a cursory sweep was necessary? I mean, at least a hearing to see where she was standing and things. I mean, it's possible that she was in enough so that going to arrest her would... But I don't quite understand if you have to go in to arrest her, then why you do... I still don't quite see how safety would have been enhanced by doing that sweep offhand. Your Honor, the Court did, in fact, have a hearing on that precise issue. The suppression hearing dealt in detail with that. And there was, in fact, a map put in in that hearing and testimony by the officers about where she was arrested. The safety is enhanced because it's possible that a person could have been standing on the other side of the door, hidden from view, that the defendant had a weapon somewhere within grabbing reach right at the doorway. I don't know if you are done in this, Judge LaValle, as I have another question. On a different subject, I'd like to pursue this. Yes, please. Because whatever the judge found with respect to she was testifying, my intent was to get out of the apartment, and they stopped me and pushed me, and the officers had a different account, essentially, that she invited them into the apartment. The judge found against her on credibility. But the argument being made by counsel in the motion was that her credibility was exactly what was not supported by the ineffectiveness of prior counsel, because prior counsel left the evidence in a manner that proclaimed her to be lying with respect to the change of clothes and in a manner that supported the officer's position rather than hers, which was essential to demonstrate her credibility, two things, to show that she, yes, she did ask to change her clothes, but only after they had discovered the evidence of narcotics, and second, to bring out her awareness of the gun in the apartment as supporting her desire to get out of the apartment to make sure the officers didn't get in. So when you say that the judge found the facts to be that she was arrested in her apartment, the judge ruled against her on credibility, and the ineffectiveness of counsel related precisely to her credibility. So I don't see how it can be irrelevant whether counsel was ineffective in his presentation of the evidence at the hearing or not. Your Honor, where I would differ is that I don't think the court needed to make a credibility determination as it relates to where the defendant was arrested. Even if the defendant's point— Inside as opposed to inside? I don't think there's any dispute, and I don't think there was any testimony to indicate she was arrested physically outside of her apartment with the door closed and locked. Under this court's jurisprudence, when you're at the threshold of a doorway, the police officers are entitled to do a cursory inspection of that adjacent room. And so I don't think there was any credibility determination that needed to be made on that issue. If I may, the district court excluded her pay stubs, saying that this was cumulative because she had testified to the fact that she had gotten the money, and there was evidence that she was well paid, and so on. I don't see how it was cumulative because this goes to whether she told the truth when she said that she had money. That is, this supports, again, her credibility about having money. And the fact that she has—that there was evidence that she was well paid and so on doesn't go to the fact that she actually had cash. Now, it's fairly distant because the question, when is the cash in the shoes and so on, so it may be harmless. I don't know. But the judge's decision against admitting it on the basis of cumulative seems to me just straight wrong. It's not cumulative. It goes directly to support her truth. Your Honor, I believe the district court did not abuse its discretion in concluding it was cumulative because of the other evidence that was admitted, including the physical evidence. Why was it cumulative? Because, Your Honor, the point being made by the defendant was that she had approximately $900 in her apartment. That point was made repeatedly, both by her testimony and those pay stubs. But how is there any evidence that she was telling the truth about that? The fact that she had cashed the checks goes directly to whether she was telling the truth. And whether the jury believed her or not is one of the essence of this case. I mean, Judge LaValle has raised another credibility issue, but one of the essence of this case is whom do you believe? And obviously, the jury was quite unsure in this, so I don't see how it is cumulative. It may be because her argument was then that it got put in the shoe that that's sufficiently distant, but that's a different thing. And I'm puzzled by which, you know, it's a little bit like a 13th stroke. I don't quite know what the judge was doing, and that worries me. Yes, Your Honor. I think, to be clear, why it's cumulative is because we didn't just have to rely on the defendant's testimony to assess her credibility. The court had already permitted her to introduce those check stubs, which makes largely the same point as the check cashing. Certainly, a different judge could conclude differently and allow more and more evidence in, the fact, evidence, physical evidence of the fact that she currently has a job, additional documentary evidence. Just that she had cash at that time, her argument is not just that she was relatively well off. She says, I had cash. And the fact that she had just cashed checks, which was excluded, supports her statement, I had cash now. That's a different point from whether she had money. Yes, Your Honor, I understand, and I would just submit that the check stubs in her testimony support that sufficiently, and it was not an abuse of discretion to exclude it. Can I return to the Marilyn B. Buey point for a moment? Your argument here seems to be relying simply on a proposition, I don't disagree with it, that if you're arresting someone in a doorway, Marilyn B. Buey, as a matter of course, says there's an area in which a protective sweep is permissible, even absent reasonable suspicion, just as a matter of course. I think that's the right read of Marilyn B. Buey. But in terms of the motion to reopen, I was reading Judge Glasser's opinion slightly differently, and I wonder if you could help me understand if I'm reading it incorrectly. The opinion says there was a testimony, that there was testimony at the hearing, that the new testimony would corroborate her testimony that she was told prior to opening the door that the officers were there to arrest her on outstanding bench warrants, that as soon as she opened the door, she attempted to exit her apartment and close the door behind her. This new testimony would corroborate that. And he then goes on in the next portion to say the credibility of these witnesses and the relevant portions of their testimony, which the court regarded as dispositive, was found as fact. So in addition to whether Marilyn B. Buey has any application here, I was reading him as saying, I have considered the new evidence that's been proffered, and it would not affect my determination as to this witness's credibility. Am I over-reading that conclusion? No, I think that's accurate, Your Honor. If what you're saying is did the court essentially consider those facts if they were proven as true, would it affect the determination that the judge made? I think that's what the judge is saying as well, if that's what you're asking, Your Honor. So I do think that's right, and I do think the Buey decision and some of the additional supporting decisions about arrests in the threshold of the doorway are dispositive in this case. I see that I believe my time is up. I'm happy to address any other questions the court has at this time. I'm going to ask you something further following up with Judge Calabresi's questions. Were you trial counsel? Yes, Your Honor. Why would you oppose the admission of these documents which relate to her pay? Relate to the pay, Your Honor? Why would you oppose a few pieces of paper coming into evidence? I mean, it seems to me one of the most dangerous things a trial judge can do in a criminal case is playing with fire, is not allowing the defendant to put in evidence in the defense. Of course, there are limits, but what was the harm in allowing these to come in? I mean, why wouldn't you say to the judge, please, judge, just let them in. We don't object. Your Honor, if I recall at the time, we saw it for the first time as defense counsel handed it over to us, and I think our immediate reaction to it was twofold, that one, the point had been made that the defendant seemed to be trying to be making, and two, it was very confusing. We thought it would confuse the jury. We were a bit confused as to exactly what it was about. When we looked at it, it was a printout of a transaction log. You know, in hindsight, perhaps we wouldn't have objected to it, but at the time we thought that the point it was trying to make had been made and that this was not going to add to it. Thank you, Your Honor. Your Honors. With respect to the cash, it was very important for her to establish that she not only got paid, but that she cashed her paycheck and that the sergeant had taken her money out of her closet and put it in his shoe to make the case stronger against Smith, because Smith was the person they were really after. It certainly wasn't cumulative, right? Yes, but it was not cumulative, but it also would have helped destroy the credibility of the officers as to where they say things were found. They say this money was found in Smith's shoe. That was a lie. What do you say in response to Judge Livingston's question, reading the judge's opinion with respect to the denial of reopening the hearing? I don't see how Judge Glasser can make credibility determinations based on not having heard the witnesses. If she had testified as to her reason why she would not have opened the door, why she would have changed her clothes before opening the door if she was not ready to leave, I don't see . . . But she did testify at the hearing. She testified at the hearing, but the lawyer did nothing to make her credible. I thought Judge Livingston was interpreting Judge Glasser's opinion as saying that I have considered the evidence that you say you would like to introduce, which is to say the defendant person saying, yes, I did ask to change my clothes later on, and that would not change my finding. That was part of it. It was also that she knew that there was a gun there . . . And her knowledge that the gun was there. And she couldn't preserve that for trial and then go to trial and claim she didn't know. She had already told the district attorney that she knew about the gun when the case was still in the state. What I'm saying is, I understand Judge Livingston to be saying she interprets Judge Glasser's opinion as saying, I have considered, on the issue of credibility, I have considered the items of evidence that you say should have been introduced into evidence at the hearing in order to persuade me, Judge Glasser, that she is credible in saying that she exited the apartment and was forced back in by the officers. And it doesn't change my findings. I still find the way I find. Well, except that some of the things that the lawyer . . . That's the point. I understand, but some of the things . . . That's the point of the omissions by counsel, isn't it? Your point as to the ineffectiveness of counsel is he failed to support her credibility by really important evidence that could have been introduced at the suppression hearing. He also failed to impeach the credibility of the officers. A lot of the things that are in the brief about what the lawyer should have done, for example . . . Did Judge Glasser, in fact, say clearly enough so that we can rely on it, even if I take her to be credible on all of these things, I would still have come out the same way? That's basically what . . . You would have been wrong. I think that Judge Livingston's interpretation was different. Am I not correct? Not that if I find her to be credible, but I find . . . I reject her that even if I take into account the testimony that you say she should have given, that I did ask to change my clothes later on, I still find that she was arrested in circumstances that authorized the sweep search of the apartment. Did Judge Glasser do that? I don't think so. I don't think he did that. And, there were arguments that, for example, Smith's statement in his Rikers Island call about the fact that they found the gun before they got the search warrant. He had no motive to lie. That would have impeached the officers completely. Completely. The fact that he said that he knew that she was being arrested on these warrants before she opened the door, that would have impeached the police officers. I don't see how he could have made credibility findings against her if he had heard all this evidence. It would have been very, very difficult. Thank you very much. We'll take the case under advisement.